BILLY J. WILLIAMS, OSB #901366
United States Attorney
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
**GARY Y. SUSSMAN, OSB #87356**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| | **3:13-CR-00557-SI** |
| **v.** | |
| | **GOVERNMENT'S RESPONSE TO** |
| **STEVEN DOUGLAS ROCKETT,** | **DEFENDANT'S MOTIONS** |
| | **IN LIMINE** |
| **Defendant.** | |

The United States of America, by Billy J. Williams, United States Attorney for the

District of Oregon, and Paul T. Maloney and Gary Y. Sussman, Assistant United States

Attorneys, responds to defendant's motions *in limine* seeking to exclude certain evidence,

and seeking to admit other evidence.

Some of the matters raised in defendant's motions have been resolved by agreement

of the parties, and will be noted as such without further discussion.  The Court will need to

resolve the remaining disputed matters.

Defendant raised the following motions *in limine:*

1) To exclude evidence of his prior convictions in Washington County Circuit Court case numbers C131929CR and C132673CR;

2) To exclude other acts evidence, including:

    a)   Defendant's emails, chats, and/or Facebook communications with individuals not witnesses or victims in this case.

    b)   Evidence pertaining to criminal investigations of defendant in Sacramento, California, in 1998; in Washington County, Oregon, in 2005 and 2012; and in Forest Grove, Oregon, in 2013.

        *The government does <u>not</u> intend to offer evidence from the 1998, 2005, and 2012 investigations in its case in chief.*

    c)   Statements made by defendant's ex-wife Christine Jumoa-as (formerly known as Christine Rockett) alleging defendant perpetrated domestic violence against her.

        *The government does <u>not</u> intend to offer this statement in its case in chief.*

    d)   Statements made by defendant's ex-wife Christine Jumoa-as describing specific sex acts between herself and defendant.

        *The government does <u>not</u> intend to offer these statements in its case in chief.*

    e)   Evidence that defendant allegedly published sexually explicit photographs of his ex-wife, Christine Jumoa-as, on the Internet.

        *The government does <u>not</u> intend to offer the photographs, but <u>does</u> intend to offer testimony on this issue.*

    f)   Evidence pertaining to the alleged communications and/or chats discovered on defendant's computer within the folder called "Begging."

        *The government intends to offer testimony regarding the folder and the general nature of its contents, but <u>not</u> the actual screen capture images contained in the folder.*

    g)   Videos and photographs not directly pertaining to the alleged victims in this case.

        *The government intends to offer a selection of images and videos that are relevant to the crimes charged and constitute the actual criminal acts.*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE**                                         **PAGE 2**

    h)  Any other unpled misconduct evidence.

3) To limit materials exhibited to the jury.

4) To admit evidence of law enforcement misconduct on the part of former Washington County Sheriff's detectives.

    *Defendant has agreed to withdraw this motion.*

The government will address the remaining disputed motions in turn.

## I.    EVIDENCE OF DEFENDANT'S PRIOR CONVICTIONS – FED. R. EVID. 414

### A.    *Defendant's Washington County Convictions are Admissible Under Fed. R. Evid. 414.*

In March 2015, defendant was convicted following a jury trial of six counts of first degree sexual abuse, two counts of second degree sodomy, two counts of second degree rape, and three counts of using a child in a display of sexually explicit conduct, in Washington County Circuit Court case number C131929CR.  All of those offenses were felony sex crimes involving minor victims.  He was also convicted upon pleas of guilty to one count of attempting to use a minor in a display of sexually explicit conduct and two counts of invasion of privacy (a misdemeanor), in Washington County case number C132673CR.  The government intends to offer evidence of defendant's convictions in case number C131929CR, but not the convictions in case number C132673CR, under Fed. R. Evid. 414.

The basis for admitting defendant's convictions is set forth in detail in the government's notice of intent to admit evidence under Fed. R. Evid. 414 (ECF 82).  The government will not repeat those arguments here.  This response will focus on the arguments defendant raised in his motion *in limine*.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE**                                                                          **PAGE 3**

In a criminal case in which a defendant is accused of a child molestation offense, Rule 414(a) allows for the admission of evidence that the defendant committed "any other child molestation." Such evidence "may be considered on any matter to which it is relevant." *Id.* Defendant recognizes as much (ECF 88 at 3).

Defendant cites the five factors this Court must consider in deciding whether to admit evidence under Rule 414, and concedes that four of them are present in this case (*id.* at 4) ("defendant's prior convictions pertain to child molestations and are similar to the crimes charged in the present case," are "close in time to the crimes charged in the present case," could be "argued as frequent," and lack "intervening circumstances"). He claims, however, that evidence of his convictions is "not necessary to support the government's case beyond the testimony that will be offered at trial" (*id.*). He is mistaken.

In *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001), the court held that evidence of other acts of child molestation "need not be *absolutely necessary* to the prosecution's case in order to be introduced; it must simply be helpful or *practically necessary*." *Id.* at 1029 (emphasis in original). Indeed, the court affirmed admission of the evidence even though the prosecutor "claimed that she could get a conviction without introducing LeMay's prior acts of molestation." *Id.* The court held that the prosecutor's claim "does not suggest that the evidence was not 'necessary.'" *Id.* Neither does defendant's subjective assessment of the strength of the government's case here.[1]

---

[1] The factors discussed in *LeMay* are "not exclusive," and district courts "should consider other factors relevant to individual cases." 260 F.3d at 1028.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                    **PAGE 4**

In fact, evidence of defendant's prior convictions *is* practically necessary to the

government's case. Defendant will claim at trial that he did not produce child pornography,

either here or in the Philippines, did not attempt to do so, and did not intend to do so. He will

claim that the images he created or attempted to create did not rise to the level of child

pornography, and were not intended to be lascivious displays of the genitals or pubic areas of

the depicted children. By doing so, however, he puts his intent and motive squarely at issue

in the trial. The government will have to prove that he intended to produce child

pornography, and took a substantial step toward doing so. What better evidence of his intent,

than proof of the offenses he was previously convicted of committing – sexually abusing

minors (one of whom is also a victim in this case), and creating or attempting to create

sexually explicit images of them. That evidence becomes even more probative because the

government was unable to access encrypted containers on defendant's hard drives, and

accordingly, does not have all of the data, images, and videos he created and saved.

Defendant also argues that the probative value of evidence of his prior convictions is

substantially outweighed by its prejudicial effect (ECF 88 at 5). It is not. "Relevant

evidence may be excluded under FRE 403 only if its probative value is substantially

outweighed by one or more of the articulated dangers or considerations." *United States v.

Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Because Rule 403 results in the exclusion of

relevant and otherwise admissible evidence, it should be used sparingly. *Id.* ("Rule 403

favors admissibility"). *See also United States v. Morris*, 79 F.3d 409, 412 (5th Cir. 1996)

(Rule 403 "is an extraordinary measure that should be used sparingly").

While evidence that defendant is a convicted sex offender may be prejudicial, so is virtually any evidence offered to prove a defendant's guilt. *Hankey*, 203 F.3d at 1172 ("Relevant evidence is inherently prejudicial") (internal quotation marks and citation omitted). Indeed, "no verdict could be obtained without prejudicial evidence." *United States v. Noland*, 960 F.2d 1384, 1387 (8th Cir. 1992). However, "it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Hankey*, 203 F.3d at 1172 (emphasis added; internal quotation marks and citation omitted). As the court noted:

> Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

*Id.* (internal quotation marks and citation omitted).

Unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007) (citing the Advisory Committee note to Fed. R. Evid. 403). However, the fact that certain evidence may be emotionally discomforting to the jury does not mean it should be excluded. *United States v. Ganoe*, 538 F.3d 1117, 1124 (9th Cir. 2008) ("The trial judge's job is to avoid unfair prejudice. The court is not required to scrub the trial clean of all evidence that may have an emotional impact") (internal quotation marks and citation omitted). An appropriate limiting instruction will help prevent undue prejudice. *Hankey*, 203 F.3d at 1173, n.11 ("This court has recognized the effectiveness of a properly-worded limiting instruction on numerous occasions").

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE**                                         **PAGE 6**

Defendant's prior convictions are admissible under Fed. R. Evid. 414.

### B.     If Defendant Testifies, His Prior Convictions are Admissible Impeachment Evidence Under Fed. R. Evid. 609.

Defendant also seeks to exclude evidence of his prior convictions under Rule 609(a) (ECF 88 at 5). If he testifies at trial, evidence of his prior convictions will be admissible to impeach his credibility under Rule 609.

Rule 609(a)(1)(B) provides that evidence of a prior felony conviction "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."[2] In making that determination, courts look to five factors: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. *United States v. Browne*, 829 F.2d 760, 762-63 (9th Cir. 1987). *See also United States v. Perkins*, 937 F.2d 1397, 1406 (9th Cir. 1991).

If defendant takes the stand and testifies, and particularly if he denies producing, attempting to produce, intending to produce, and possessing child pornography, his credibility will become a key issue in the case. *See United States v. Givens*, 767 F.2d 574, 580 (9th Cir. 1979) ("Givens' proposed testimony, in which he would have denied committing the offense, would have placed his credibility directly at issue"). The prior

---

[2] In his motion, defendant suggests that a prior felony conviction "*may* be used to impeach a defendant witness" if the probative value outweighs its prejudicial effect (ECF 88 at 5) (emphasis added). In fact, Rule 609(a)(1)(B) uses mandatory language – evidence of such a conviction "*must* be admitted" if the probative value of the evidence outweighs its prejudicial effect (emphasis added).

convictions are barely a year old, so they are well within Rule 609's ten-year window for admissibility.  Although they are similar in nature to the crimes for which defendant will be on trial, the Ninth Circuit has affirmed the admission of even an *identical* prior conviction where the defendant's credibility was at issue.  *See Browne*, 829 F.2d at 763 ("a prior bank robbery conviction [is] not inadmissible per se, merely because the offense involved was identical to that for which [the defendant] was on trial"; prior convictions which serve a proper impeachment purpose "may be admissible in spite of [their] similarity to the offense at issue.") (bracketed material in original; internal quotation marks and citation omitted); *Givens*, 767 F.2d at 580; *United States v. Oaxaca*, 569 F2.d 518, 526-27 (9th Cir. 1978).

Defendant also urges the Court to exclude evidence of his prior convictions under *Old Chief v. United States*, 519 U.S. 172 (1997), because alternative evidence is available (ECF 88 at 6-7).  *Old Chief* does not control here.

In *Old Chief*, the Supreme Court held that the district court abused its discretion when, in a prosecution for being a felon in possession of a firearm under 18 U.S.C. § 922(g), it admitted evidence concerning the nature of the defendant's prior felony conviction over his offer to stipulate that he was a convicted felon.  The Court noted that § 922(g) merely requires that the defendant be a convicted felon; the precise nature of the prior felony does not matter.  519 U.S. at 186.  Thus, there was "no cognizable difference between the evidentiary significance of an admission" such as the defendant offered to make, and "the legitimately probative component of the official record the prosecution would prefer to place in evidence."  *Id.* at 191.  On the other hand, there was a significant risk of unfair prejudice, particularly since the defendant's prior conviction was for "assault causing serious bodily

injury," and the instant felon in possession charge arose from "a fracas involving at least one gunshot." *Id.* at 174-75. Thus, the Court concluded that "the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." *Id.* at 191 (footnote omitted).

*Old Chief* involved proof of the specific nature of the defendant's prior conviction as an element of an offense. Even then, the Supreme Court was careful to limit its holding "to cases involving proof of felon status." *Id.* at 183, n.7. Here, on the other hand, the issue is whether, if defendant testifies at trial, the government can use evidence of his prior felony convictions to impeach his credibility under Rule 609. *Old Chief* does not address that point.

Defendant suggests that, if the Court allows evidence of his prior convictions to come in at trial, the evidence be limited just to the fact that he is a convicted felon, without allowing any mention of the nature of the prior convictions (ECF 88 at 6-8). It is not clear to the government whether he is referring to admission under Rule 414, Rule 609, or both. If the evidence comes in under Rule 414, then its *only* relevance lies in the nature of the prior convictions. Removing the nature of the conviction would eviscerate Rule 414's directive that the evidence "may be considered on any matter to which it is relevant." And if the evidence comes in under Rule 414, the jury will hear of the nature of the convictions, such that limiting its use as impeachment evidence by allowing the government to elicit only the fact that defendant is a convicted felon makes little sense.

Finally, the government notes that defendant is not entitled to a pretrial determination of the admissibility of his prior convictions as impeachment evidence under Rule 609. *See*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**
                                                    **PAGE 9**

*Browne*, 829 F.3d at 762 ("it is well within the district court's discretion to refuse to issue a ruling [on the admissibility of a prior conviction] prior to hearing the defendant's actual, in-court testimony"; while the district court "has discretion to issue an advance ruling," it "need not do so, even if the refusal prevents the defendant from testifying in his own behalf") (internal quotation marks and citation omitted).  *See also Luce v. United States*, 469 U.S. 38, 43 (1984) ("to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify").  Where a district court is unsure of whether to admit or exclude evidence of a prior conviction, "the better procedure" is for the court to wait until it knows "the precise nature of the defendant's testimony."  *Browne*, 829 F.2d at 762 (quoting *Luce*, 469 U.S. at 41).

If defendant testifies, his prior convictions are admissible as impeachment evidence under Rule 609(a)(1).

## II.    OTHER ACTS EVIDENCE UNDER FED. R. EVID. 404(b).

Many of the categories of evidence defendant seeks to exclude as "prior bad acts" evidence are not other acts evidence at all.  Rather, they are part and parcel of the charged conduct, or inextricably intertwined with it.  The probative value of that evidence is not substantially outweighed by concerns of unfair prejudice to the defendant.

### A.    *Defendant's Emails, Chats, and/or Facebook Communications with Individuals Not Witnesses or Victims in This Case are Evidence of the Crimes Charged and Not "Prior Bad Acts."*

Defendant is charged in Count 1 of the second superseding indictment with producing child pornography outside of the United States, intending that it be transported to the United States, between January 2000 and January 2013.  Defendant is charged in Counts 4-6 with

Attempted Production of Child Pornography for soliciting the creation of images of naked children to be transmitted to him over the Internet.  In both instances defendant established and maintained relationships with children over the Internet.  He promised gifts and money in return for images of naked children.

The defendant's digital media devices contain images of children engaged in lascivious displays of their genitals before, after, and while showering.  Some of those children remain unknown to the government.  The evidence at trial will show that defendant met those children when he visited the Philippines.  He gave them money and gifts, took them out to eat, and invited them to hotel rooms where he would have them shower naked. Defendant photographed the children overtly while they were naked, using traditional cameras, and surreptitiously using a motion-activated video camera hidden in a clock radio. Images and videos of the children were subsequently found on his computer equipment and data storage media.

The government intends to offer summary testimony about defendant's online communications.  Specifically:

- Defendant would establish and maintain relationships with children and their families in the Philippines via the Internet.

- In those communications, defendant would solicit children and parents to create images of child pornography (although he did not use that specific term), and offered to send gifts and money to children and their families in exchange for the images.

- Lists of children, their dates of birth, and their clothing sizes were recovered from defendant's computer.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                                       **PAGE 11**

- In his communications, defendant discussed sending "LBC" boxes to the Philippines containing "digicams,"cellphone devices, clothing, and other gifts to be given to the children.  Special instructions were provided to children on how to use the cameras and how to send images to defendant.  Images of children in the Philippines with LBC boxes defendant sent were seized by the police during the investigation.

- In some of the communications, defendant stated that he expected naked images in return for the gifts he sent, while in others, he says that he will withhold gifts unless he receives naked images of children.

All of those facts are part of the crime alleged in Count 1.  The government does not intend to offer *all* of defendant's online communications seized in this case, only those pertinent to his desire to produce or have others produce child pornography in the Philippines, with the intent that it be transported to the United States.

The government's proffered evidence is inextricably intertwined with the production of child pornography alleged in Count 1.  "Evidence should not be treated as "other crimes evidence when "the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (*citing United States v. Aleman,* 592 F.2d 881, 885 (5th Cir. 1979)).

In *Soliman*, the defendant asserted that a summary chart of his co-defendant's mail fraud activities were inadmissible other acts evidence.  The court held that the chart was not "other acts" evidence at all, because the defendant was indicted for less than all of his actions and his crimes were closely intertwined with his co-defendant's criminal activity.  *Id*. Here, the government has been unable to identify all of defendant's victims from the Philippines

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS IN LIMINE**                                              **PAGE 12**

and accordingly, defendant is charged with "less than all his of his actions." *Soliman*, 813

F.2d at 279.  This evidence is not "other act" evidence because it *is the evidence* of

defendant's criminal activity and is closely intertwined to the crimes alleged.

### B. The 2013 Forest Grove Investigation is the Initial Report to Law Enforcement of Defendant's Sexual Exploitation of Children in the Philippines.

Defendant's ex-wife met with the Forest Grove police at her divorce attorney's office

in March 2013.  In her report, Christine Jumoa-as described her concerns about defendant

and the possible risks he posed to their children.

The government does not intend to elicit evidence related to her allegations that

defendant forcibly raped, sodomized, or assaulted her.  The government does not intend to

offer evidence that she suspected that defendant had molested their children, that their

children were referred for a child abuse evaluation, or that the children did not disclose any

abuse during that evaluation.  However, the government does intend to elicit evidence of the

statements Ms. Jumoa-as made that served to initiate the investigation into defendant's

conduct online and in the Philippines.

She described watching defendant "get kids" in Cebu City, Philippines, bring them to

his hotel room, and play strip poker with them.  She reported seeing images of naked Filipino

children on defendant's computer.  She reported that defendant solicited and induced her

sister, Charis Jumao-as, to take naked photos of Charis's daughter, and gave the police the

login information for and consent to access Charis's Facebook communications.  When they

did so, the police confirmed the communications between defendant and Charis Jumao-as.  A

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS IN LIMINE**                                               **PAGE 13**

Forest Grove officer then applied for and obtained an Oregon state search warrant for the contents of defendant's Facebook account.

Defendant asserts that these observations and reports amount to prior bad acts. In fact, they constitute the facts of the crimes alleged in Counts 1-5, and 9. These reports and descriptions of defendant's conduct served as the starting point for the law enforcement investigation. Before this report, the Forest Grove police had no reason to suspect that defendant was engaging in illicit sexual conduct in foreign places, no reason to believe that he was producing and attempting to produce child pornography overseas with the intention of bringing it into the United States, and no reason to suspect that he was in possession of child pornography.

### C. Evidence That Defendant Allegedly Published Sexually Explicit Photographs of His Ex-wife on the Internet is Admissible to Prove Defendant's Association with and Knowledge of "imgsrc.ru."

The government will establish that the defendant used a Russian-based photo and file sharing web site called "imgsrc.ru" to access and download child pornography to his computer in the hours before his arrest in August 2013. In her interview with the police, Ms. Jumoa-as identified images of herself that were posted to defendant's account on imgsrc.ru. The images are sexually explicit, but appear to have been edited to cover private parts of her body. Some of the images were of Ms. Jumoa-as naked in the shower and bathroom. Ms. Jumoa-as identified herself in the images, and said that defendant took the images with her knowledge and consent early in their relationship, when she was 20 or 21 years old. She stated, however, that she did not know defendant had posted the images to the Internet.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTIONS IN LIMINE**                                              **PAGE 14**

The images establish defendant's knowledge of imgsrc.ru, that he used that website to post images, and that he owned an account with the site. The government does not intend to offer the photos of Ms. Jumoa-as, but does intend to offer testimony relating to these facts as part of the direct evidence of the police investigation into Mr. Rockett's online activities, the investigative steps that were taken at the outset of the investigation, and the reasons for taking them. The evidence is probative to establish the sufficiency of the police investigation, defendant's knowledge and intent, defendant's sexual interest in photos of naked people in the shower and bathroom, his familiarity, and association with the imgsrc.ru website, and his ownership of an imgsrc.ru account.[3] The government is amendable to a limiting instruction for the jury to only consider this evidence for those reasons.

### D. Evidence Pertaining to the Communications and/or Chats Discovered on Defendant's Computer Within the Folder Titled "Begging" is Admissible as Direct Evidence of Defendant's Ongoing Scheme to Produce Child Pornography.

Defendant has moved to exclude evidence that was on his computer desktop within a folder titled "Begging" as other act evidence. The folder contained images of screenshots of what appeared to the investigators to be online communications between defendant and individuals from the Philippines. Some of the people he was communicating with are demonstrably minors, while others are young people whose ages are not readily apparent. The conversations are generally related to these individuals seeking money or gifts from defendant. Investigators believe that defendant kept these images of children as a list of potential contacts for exploitation.

---

[3]  The forensic examination of defendant's computer equipment revealed that he downloaded child pornography from imgsrc.ru shortly before his arrest.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                                      **PAGE 15**

The contents of the folder are evidence of his ongoing efforts to create and maintain relationships with children in the Philippines and are part of the conduct alleged in his ongoing scheme to produce child pornography overseas and transport those depictions into the United States.  The government intends to elicit testimony about the existence and the general contents of the folder.  The government does not intend to offer the actual screen shots saved in the folder.

### E. Videos and Photographs not Directly Pertaining to the Alleged Victims in This Case are Admissible to Establish the Elements of Count 1.

Defendant seeks to exclude any evidence of videos or photographs of alleged victims that are not specifically named in the indictment.  That motion, which is exceedingly broad and non-specific, should be denied.

The government seeks to admit the photos and videos listed in Government's Exhibits 5, 6, 10, and 27.  The government also intends to offer testimony relating to the various children that the defendant had contact with in the Philippines through the testimony of witnesses and other victims.  This evidence is further evidence of the defendant's ongoing scheme to produce child pornography overseas for transportation into the United States.

Investigators were able to identify some, but not all of the children depicted in images and videos recovered from defendant's computer.  Forensic examiners could not conclusively establish the file creation dates of the images and videos, although there is strong circumstantial evidence that at least some of the images and videos were created in the Philippines during periods defendant traveled there.  Defendant appears in some of the videos, along with young Filipino children.

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                    **PAGE 16**

These images and videos are evidence of defendant's conduct overseas and proof of the conduct alleged in Counts 2 and 3 – International Travel and Engaging in Illicit Sexual Conduct with a Minor.  These images are also part of the government's proof to establish the crime alleged in Count 9 – Possession of Child Pornography.

The government has not charged defendant with every crime the government has evidence he committed.  Nor was the government able to identify every child who appears in the images and videos.  But that does not transform the images and videos of the unidentified victims into other acts evidence.  Rather, it is direct evidence of the criminal conduct alleged in Counts 1, 2, 3, and 9.  That defendant was charged with less than every crime he committed should not operate to preclude the admission of evidence that is inextricably intertwined with the offenses that were charged.  *See Soliman*, 813 F.2d at 279 (evidence of uncharged conduct was not "other acts" evidence where it was inextricably intertwined with the charged conduct, and where the defendant was indicted for less than all of his unlawful actions).

### F. Defendant's Motion to Exclude Any "Other Unpled Misconduct Evidence"

Lacking any further specificity, the government is unable to respond to this motion. The government cannot predict what evidence the defense will characterize as "other unpled misconduct evidence," nor can the Court rule *in limine* on the admissibility of unspecified evidence.

The evidence to be offered in the government's case in chief is entirely relevant and probative to the criminal acts alleged in the second superseding indictment.  The evidence of defendant's conduct is entirely within the timeframes alleged in the indictment (January 2000

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTIONS IN LIMINE**                                    **PAGE 17**

to January 2013), and either constitutes the crimes charged, or is inextricably linked to them. Much of what defendant suggests is "unpled misconduct evidence" are part and parcel of the acts alleged in the indictment, or circumstances surrounding those acts that are necessary to put the government's case in context.

### G. Balancing Probative Value Against the Risk of Unfair Prejudice.

Defendant writes at length about the Court's obligation under Rule 403 to balance the probative value of other acts evidence against the risk of unfair prejudice. In child exploitation cases, the seminal Ninth Circuit case is *United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (en banc).

Curtin was charged with interstate travel to engage in a sexual act with a minor and online enticement after he corresponded online with a police detective posing as a 14-year-old girl, then traveled to Las Vegas to have sex with the girl. *Id.* at 937-38. At trial, he claimed that he thought the minor he was corresponding with online was an adult who was involved in a daddy-daughter role playing fantasy. *Id.* at 939. Defendant claimed he expected to meet and have sex with that adult role-player – not a child – in Las Vegas. *Id.* To rebut that defense and to prove the defendant's intent, the government sought to introduce at trial numerous text stories about daddy-daughter incest that were found on a personal digital assistant defendant brought to Las Vegas with him. *Id.* at 941-42. The district judge admitted five of the stories, but read only two of them personally, relying on offers of proof from the government in ruling on the admissibility of the rest. The issue on appeal was whether the district court erred in admitting the stories under Rule 404(b).

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                   **PAGE 18**

The Ninth Circuit noted that Rule 404(b) "is a rule of inclusion – not exclusion," and held that once a proper purpose for admission under Rule 404(b) is established, "the only conditions justifying the exclusion of the evidence are those described in Rule 403:  unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence."  *Id.* at 944 (internal quotation marks omitted). The stories were clearly relevant; they "illuminated [Curtin's] thoughts and his subjective intent to carry out his daddy/daughter sexual initiation escapades with a juvenile, not an adult."  *Id.* at 948.  The similarities between the stories and his online communications with the detective "were readily apparent."  *Id.*  The stories were probative "both of Curtin's intent and the credibility of his innocence defense."  *Id.* at 950.

The Ninth Circuit took issue, however, with manner in which the district court conducted its Rule 403 balancing test, because court did not read "every word of the five disputed stories in preparation for making its balancing decision."  *Id.* at 956.  Given the "inflammatory" and "reprehensible nature" of the stories, it was incumbent on the district court to "know precisely" what was in the stories in order to conduct a proper Rule 403 balancing test.  *Id.* at 957.  Relying on an offer of proof as to their contents "simply is not enough."  *Id.*  As the court noted, "[o]ne cannot evaluate in a Rule 403 context what one has not seen or read."  *Id.* at 958.  Thus, when balancing probative value against the risk of unfair prejudice, a district court must "personally examine and evaluate" the evidence, and should redact or edit it as appropriate.  *Id.  See also United States v. McElmurry*, 776 F.3d 1061, 1068-69 and 1071 (9th Cir. 2015) (vacating the judgment and remanding where the district

court relied on an offer of proof instead of reading all of the government's Rule 404(b) material before conducting its Rule 403 analysis).

The government will make all of the exhibits it seeks to offer at trial available to the Court for review so the Court can conduct a proper Rule 403 balancing test as required by *Curtin*.

## III.    PUBLISHING CHILD PORNOGRAPHY TO THE JURY

Citing Fed. R. Evid. 403, defendant seeks to limit the number of images of child pornography exhibited to the jury during the trial. (ECF 90 at 2).  His motion is rather vague, and does not specify exactly what he seeks to exclude.  It is more of a place-holder motion, in which he reserves the right to move to limit the number of materials (presumably images) exhibited to the jury once he learns precisely which images the government will seek to introduce (*id.*).

In *United States v. Storm*, 915 F.Supp. 2d 1196 (D. Or 2012), the government sought to introduce at trial 97 images depicting child pornography. *Id.* at 1198-99. The defendant offered to stipulate that the images constitute child pornography, and moved *in limine* to preclude the government from showing any of them to the jury, citing the very same authorities defendant cites here. *Id.* at 1199.[4]  Following an *in camera* review of the images the government sought to introduce, this Court denied the defendant's motion to preclude the images altogether, but limited the number of images the government could show the jury to 38.  *Id.* at 1211.

---

[4]  While he offered to stipulate that the images constituted child pornography, he did not concede that he knowingly possessed the images, or that they were transported in interstate commerce. 915 F. Supp. 2d at 1199.

Here, defendant has not actually offered to stipulate to anything.  Meanwhile, the government must still prove that the images defendant produced, attempted to produce, and possessed are child pornography – an issue defendant intends to contest.  *See* Defendant's Trial Memorandum, ECF 91, at 5 ("Defendant anticipates many, if not all of the images offered … will <u>not</u> depict minors engaged in sexually explicit conduct") (emphasis in original).  These are the same images defendant seeks to exclude from the jury, although defendant does not specify which Rule 403 danger these images will run afoul of (ECF 90 at 1).

The government must prove that defendant knowingly produced, attempted to produce, and possessed child pornography as alleged in the second superseding indictment.  Whether he did so, and whether the material he possessed amounts to child pornography as defined by federal law, are questions of fact for the jury to decide.  The jury cannot do so without actually seeing the evidence.

The government does not intend to show an unlimited number of images and videos to the jury. Rather, the government proposes to publish only the following materials:

1.   Fourteen still images from defendant's office computer;

2.   Three still images from defendant's living room computer;

3.   Three movie files from defendant's living room computer; and

4.   Excerpts from one video file recovered from the SD card in the Sony Dream Machine clock radio, which contained a hidden camera.

Some of these videos are rather lengthy.  Rather than play the videos in their entirety for the jury, the government plans to show selected excerpts from them.  The videos are highly

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**                                                    **PAGE 21**

probative of defendant's intent to capture lascivious exhibitions of naked children.  The defendant is seen adjusting the camera to record into the shower area of bathrooms.  The camera is located at or near waist height and focused to record locations where children are expected to be naked.  Defendant can be seen in some of the recordings staging towels in front of a mirror so the children will have to stand naked in a location where a hidden camera will record their images.

The videos and images are disturbing insights into defendant's intent and his plan to produce and attempt to produce child pornography.  They demonstrate his identity as the person making the recordings.  These images were not accidentally created, and evaluating them under the totality of the circumstances, the only conclusion a rational fact-finder can reach is that they were created for a sexual purpose.  The jury must be able to view the images and videos in order to determine whether defendant knowingly produced or possessed them, and whether they amount to child pornography under federal law.

## III.    CONCLUSION

For the reasons set forth above, in the government's trial memorandum, in its Rule 414 notice, and in its Rule 404(b) notice, defendant's motions *in limine* should be denied.

Respectfully submitted this 9th day of May 2016.

BILLY J. WILLIAMS
United States Attorney

*/s/ Paul T. Maloney*
PAUL T. MALONEY
Assistant United States Attorney

*/s/ Gary Y. Sussman*
GARY Y. SUSSMAN
Assistant United States Attorney