ANDREW D. COIT, OSB #972378
CHELSEA B. PAYMENT, OSB #141125
Coit & Payment, Attorneys at Law, P.C.
800 Willamette Street, Suite 700
Ph: 541.685.1288
Fax: 541.653.8224
Chelsea@lawfirmeugene.com
Andrew@lawfirmeugene.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:13-CR-00557-SI |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| STEVEN DOUGLAS ROCKETT, | |
| Defendant. | |

Defendant, Steven Douglas Rockett, through his attorneys Andrew D. Coit and Chelsea

B. Payment, respectfully submits this memorandum for defendant's sentencing, which is

currently set for Thursday, September 8, 2016 at 2 p.m.

I.    **Introduction**

After a seven-day jury trial, the jury returned a verdict finding Defendant guilty of

Counts 1, 2, 4, 5, 6, 7, 8, and 9 alleged in the Second Superseding Indictment. At the close of its

case-in-chief, the Government moved to dismiss Count 3.  That motion was granted.

Defendant is currently serving a state court sentence of 52.5 years as a result of state

court convictions in Oregon.  Defendant received this sentence in Washington County Case

Numbers C131929Cr and C132673Cr.  One of the victims in Washington County Case Number

C131929Cr was NS, who was also a victim in the present matter (Count 6).  Defendant has filed

an appeal in the Washington County cases and that appeal is currently pending.  Defendant

maintains his innocence with respect to the charges in Washington County Case Number

C131929Cr.  Defendant unsuccessfully attempted to withdraw his plea in Washington County

Case Number C132673Cr.

The federal presentence report recommends Defendant be sentenced to 60 years of

imprisonment to run concurrently with Defendant's state sentence, followed by a lifetime of

supervised release. The Government requests a sentence of no less than 60 years of

imprisonment applied in the following manner: 45 years consecutive and 15 years concurrent

with Defendant's state sentence of 52.5 years. (ECF 147 at 31).  Under the government's

recommendation, defendant would not be eligible for release until he was more than 120 years

old should he be fortunate enough to live that long.

II.     **<u>Specific Sentencing Recommendation in Presentence Report</u>**

The presentence report recommends sentences as follows:

1.   <u>Counts 1, 4, 5, 6, 7 and 8</u>:  360 months on each count, all concurrent to each other;

2.   <u>Count 2</u>:  240 months, consecutive to Counts 1, 4, 5, 6, 7 and 8; and

3.   <u>Count 9</u>:  120 months, consecutive to all Counts.

The presentence report correctly identifies the sentencing guidelines ranges for these

offenses as follows:

1.   <u>Counts 1, 4, 5, 6, 7 and</u> 8:  180-360 months on each count;

2.   <u>Count 2</u>:  0-360 months; and

3.   <u>Count 9</u>:  0-120 months.

*///*

### III.  Advisory Nature of Sentencing Guidelines and Factors

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in

Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466

(2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738,

756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found no

relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely

and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the

Court. Id. at 751.  Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> "[a]ny fact (other than a prior conviction) which is necessary to support a
> sentence exceeding the maximum authorized by the facts established by a plea of
> guilty or a jury verdict must be admitted by the defendant or proved to a jury
> beyond a reasonable doubt."

Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal

Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C.  § 3553(b)(1) or

which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its

Sixth Amendment holding.  Booker, 125 S. Ct. at 756.  Accordingly, the Court severed and

excised those provisions, mak[ing] the Guidelines effectively advisory. Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as

revised by Booker, "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A.

§ 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory

concerns as well, see § 3553(a)." Booker, 125 S. Ct. at 757.  Thus, under Booker, sentencing

courts must treat the guidelines as just one of a number of sentencing factors set forth in 18

U.S.C. § 3553(a).  Nonetheless, the guidelines are still to be used by sentencing courts as a

starting point and framework for which federal sentences should be imposed.  See e.g. Peugh v.

United States, 133 S. Ct. 2072, 2080 (2013); Molina-Martinez v. United States, 136 S. Ct. 1338,

1342 (2016).

    The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph 2.  Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to
>     provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training,
>     medical care, or other correctional treatment in the most effective manner.

    In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs

sentencing courts to consider the following factors:

> 1) the nature and circumstances of the offense and the history and characteristics of the
>    defendant (§ 3553(a)(1));
>
> 2) the kinds of sentences available (§ 3553(a)(3));
>
> 3) the need to avoid unwarranted sentence disparities among defendants with similar
>    records who have been found guilty of similar conduct (§ 3553(a)(6)); and
>
> 4)  the need to provide restitution to any victims of the offense (§ 3553(a)(7)).

    Other statutory sections also give this Court direction in sentencing.  Under 18 U.S.C. §

3582, imposition of a term of imprisonment is subject to the following limitation: in determining

whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the

judge is required to recognize that imprisonment is *not* an appropriate means of promoting

correction and rehabilitation.  See 18 U.S.C. § 3582(a). In sum, in every case, a sentencing court

must now consider all of the § 3553(a) factors, not just the guidelines, in determining a sentence

that is sufficient but not greater than necessary to meet the goals of sentencing.

III.    **Application of the Statutory Sentencing Factors to the Facts of This Case**

As mentioned above, the presentence report, as revised, correctly sets forth the guideline

sentencing ranges for each count.  In the present case, the following statutory factors must also

be considered when determining what type and length of sentence is sufficient, but not greater

than necessary, to satisfy the purposes of sentencing.

1.    **The Nature and Circumstances of the Offenses and the History and Characteristics of the Offender**

**(A) Nature and Circumstances of Offenses**

Defendant acknowledges that the circumstances of the offenses for which he was

convicted are serious.  Nonetheless, some factors need discussion because the alleged crimes

were far from typical.

On Count 1, defendant is alleged to have produced child pornography in the Philippines.

However, the images allegedly involved naked and partially clothed pictures of minors, which

were mostly taken in various hotel bathrooms.  These images, although potentially concerning to

the Court, do not constitute "typical" child pornography.  Some of the images involve photos of

persons with whom defendant was alleged to have engaged in a consensual sexual relationship.

The images do not involve children engaged in explicit or hardcore sexual acts.  None of the

subjects knew defendant was allegedly recording their images until it was brought to their

attention by the government.  As such, the harm created by this alleged conduct was far less than

in the typical child pornography production case.

On Count 2, defendant is alleged to have traveled overseas to engage in illicit sexual acts

with minors.  Evidence to support this count primarily involved testimony from victim JDL.

On Counts 4 and 5, defendant is alleged to have attempted to solicit sexually explicit

photos of victims MG and HJ. There was no credible evidence that such photos were ever taken

or disseminated to defendant in this case. Further, the nature of the photos allegedly requested were not common in the context of what a "typical" collector of child pornography would seek. The solicitations that were alleged by the government did not involve requests for hardcore child pornography or children engaged in explicit sexual acts with other children or with adults. Instead, the photos allegedly requested by defendant were photos of these two victims in varying state of undress. As with Count 1, the harm created here was far less than the harm created in a "typical" child pornography production case where children are unfortunately engaged in explicit sexual acts with other minors or adults.

On Count 6, defendant is alleged to have requested naked photos of victim NS. Again, as with Counts 4 and 5, the nature of the photos allegedly requested did not constitute "typical" or hardcore child pornography. It was never alleged that NS actually took photos for defendant in response to his alleged request or that defendant ever received such photos in response to his alleged request.

On Counts 7 and 8, defendant is alleged to have produced photos over a significant period of time pertaining to victims DS and BS. Many of these photos were offered into evidence during defendant's trial. As with Counts 1, 4, 5, and 6, the nature of the alleged production was not "typical" or hardcore child pornography. Instead, the photos offered by the government showed victims DS and BS in varying state of undress. None of the photos showed victims DS or BS engaged in explicit sexual acts.  DS and BS were unaware these photos were even taken until the government made them aware this had occurred.

On Count 9, defendant is alleged to have possessed images that constituted child pornography. Yet again, the images that were shown to the jury by the government did not involve children engaging in explicit sexual acts. Instead, these photos show children either in

varying state of undress and/or in allegedly sexually suggestive poses.  The government offered

into evidence what can be presumed to be the worst of the photos alleged to have been found on

defendant's computer.  While certainly disturbing, taken as a whole, the photos were much less

graphic than those commonly found in other child pornography cases.

       **(B) History and Characteristics of Mr. Rockett**

 At the time Mr. Rockett allegedly committed these offenses, he had no appreciable

criminal history. Although Mr. Rockett was convicted of several serious criminal offenses in the

Washington County, State of Oregon, offenses discussed above, much of the conduct alleged in

those cases was alleged to have occurred after the conduct alleged in the present case, with the

exception of Count 9.

       Mr. Rockett has two young children, both whom testified during the present case. Mr.

Rockett feels he was and still is a good father to these children.  Mr. Rockett continued regular

visits with his children up until a month or so before the federal trial, at which time the US

Marshall's Office elected to terminate those visits.  Mr. Rockett deeply desires to resume contact

with his children at the earliest possible opportunity.

       Mr. Rockett has a long history of being a valued employee in the tech industry.

**2.**     **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**
        **(A) to reflect the seriousness of the offense, promote respect for the law, and provide**
        **just punishment for the offense**

       Again, defendant acknowledges that the crimes alleged in this matter were serious.  That

being said, for reasons argued above, the crimes alleged were less egregious than those

committed by typical perpetrators of these offenses.  Defendant also acknowledges the need to

promote respect for the law and provide just punishment for offense in criminal sentencing in

general.  However, defendant feels the sentence requested below accomplishes those objectives.

///

**(B) to afford adequate deterrence to criminal conduct**

It is unlikely that the government requested sentence of sixty years with 45 years

consecutive to defendant's state court sentence would have any deterrent effect on the criminal

conduct of others. The specific allegations in defendant's case are very unique for reasons

described above and it is unlikely that comparable offenders (if there are any) would research the

facts of defendant's case, research the sentence imposed on the defendant, and then somehow

decide they should not commit crimes of this nature.

Additionally, the sentence requested by the government would not have any deterrent

effect on the defendant himself as defendant is already serving what in all essence amounts to a

life sentence in state court.

**(C) to protect the public from further crimes of the defendant**

Again, given the fact the defendant is serving a 52.5 year sentence in state court which

was imposed under Oregon's Ballot Measure 11 sentencing scheme (no reduction in sentence is

possible), the need to protect the public from further alleged crimes perpetrated by defendant is

non-existent in this case.

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Defendant respectfully requests that the Court fashion a sentence which would provide

him additional educational vocational training, medical care, and whatever treatment the Court

deems appropriate in this case.

**V.    Defendant's Requested Sentence**

For reasons stated above, defendant request this Court impose a sentence at the bottom of

or less than the Sentencing Guidelines minimum for each count.  Defendant makes this request

under Booker and based upon the facts presented during trial and discussed above.

Page 8 of 11 – DEFENDANT'S SENTENCING MEMORANDUM

If this Court is not inclined to sentence defendant below the guideline ranges for these offenses, defendant alternatively respectfully requests that this Court impose a sentence as follows:

1.      Counts 1, 4, 5, 6, 7, and 8: 180 months (15 years) with all Counts running concurrent to each other and concurrent to defendant's state court sentences in Washington County case numbers C132673Cr and C131929Cr.

2.      Count 2: 180 months (15 years) with this Count running concurrent to Counts 1, 4, 5, 6, 7, 8 and concurrent to defendant's state court sentences in Washington County case numbers C132673Cr and C131929Cr.

3.      Count 9: 12 months (1 year) with all Counts running concurrent to Counts 1, 2, 4, 5, 6, 7, 8 and concurrent to defendant's state court sentences in Washington County case numbers C132673Cr and C131929Cr.

4.      Forfeiture: Defendant does not intend to contest the issue of forfeiture. However, defendant is requesting return of all non-contraband family photos.  Defendant desires that these be returned to other members of his family.

5.      Defendant further respectfully requests that this Court recommend that defendant be incarcerated in FCI Sheridan. The purpose of this request is to allow defendant to be incarcerated in close proximity to his family.  Defendant's mother, ex-wife and children all desire to maintain contact with him and this would be best facilitated with incarceration at FCI Sheridan.

## VI.      Restitution

The government has indicated that it has sought, by virtue of repeated inquiries, formal requests for restitution from the victims in this case. Defendant objects to bifurcation of the restitution portion of this case from the sentencing hearing and objects to the government being

allowed an additional 90 days to submit any restitution request it receives. The government has made no substantial indication that if it is given an additional 90 days that any restitution request will be forthcoming in that time period.

RESPECTUFLLY SUBMITTED this 2nd day of September, 2016.

/s/ ANDREW D. COIT
Andrew D. Coit, OSB #972378
Of Attorneys for Defendant

/s/ CHELSEA B. PAYMENT
Chelsea B. Payment, OSB #141125
Of Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

Defense counsel hereby certifies that on September 2, 2016, defense counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which provides notification of such filing to the following individual(s):

Paul T. Maloney
US Attorney's Office
District of Oregon
1000 SW 3rd Ave., Ste. 600
Portland, OR 97204
E-Mail: <u>paul.maloney@usdoj.gov</u>

Gary Sussman
US Attorney's Office
District of Oregon
1000 SW 3rd Ave., Ste. 600
Portland, OR 97204
E-Mail: <u>gary.Sussman@usdoj.gov</u>

*/s/ ANDREW D. COIT*
Andrew D. Coit, OSB #972378
Of Attorneys for Defendant

*/s/ CHELSEA B. PAYMENT*
Chelsea B. Payment, OSB #141125
Of Attorneys for Defendant
